Anton A. Ewing (not an attorney)
3077 B Clairmont Drive, #372
San Diego, CA 92117
619-719-9640 (do not telemarket)



**FILED**

Oct 21 2022

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY      s/ gloriav      DEPUTY

Plaintiff pro se

## UNITED STATES FEDERAL DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

Anton A. Ewing,

      Plaintiff,

vs.

MONEVO, INC.,

      Defendant

Case No.: **'22CV1627 JO   AGS**

**COMPLAINT**
**1. 47 U.S.C. §227 (TCPA)**
**2. PC §637.2 / 632.7 (CIPA)**
**3. CIVIL CODE §1770(A)(22)(A)**

    Plaintiff Anton A. Ewing (herein "Plaintiff" or "Ewing") brings this civil

Complaint for money damages and injunctive relief, demanding a trial by jury,

against Defendant Monevo, Inc. (doing business as "American Personal Loans")[1]

to stop said defendant from violating the Telephone Consumer Protection Act and

the Telemarketing Sales Rule by sending telemarketing text messages and calling

---

[1] Plaintiff hereby puts David Edward Brooks on notice that he is going to be named as a defendant as soon as discovery establishes a goodfaith belief that he is vicariously liable. Please review the Uniform Fraudulent Transfer Act.

COMPLAINT  1. 47 U.S.C. §227 (TCPA)   2. PC §637.2 / 632.7 (CIPA)   3. CIVIL CODE §1770(A)(22)(A) - 1

with prerecorded artificial voice messages to Plaintiff's personal residential cellular phone (ending in -9640), which is registered on www.donotcall.gov (the National Do Not Call Registry) without permission and without consent of Plaintiff.   Plaintiff Ewing, for this Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, including investigation conducted by Plaintiff[2]. Plaintiff is suing to stop Defendant's practice of sending text messages and callings using an "automatic telephone dialing system" ("ATDS") to the cellphones of consumers in San Diego county without their prior express consent by obtaining an injunction prohibiting violation of the TCPA; (2) stop Defendant's practice of sending repeated text messages to consumers on the National Do Not Call Registry, which includes Plaintiff; (3) obtain an injunction prohibiting Defendant's continued illegal efforts to send text messages and make harassing calls to consumers, including Plaintiff; and (4) obtain redress for Plaintiff Ewing who was injured by Defendant's conduct.

---

[2] See 21cv-01764-GPC-BLM at PageID.1 in ECF No. 1, *Trujillo vs. Encore Live, LLC*
COMPLAINT   1. 47 U.S.C. §227 (TCPA)   2. PC §637.2 / 632.7 (CIPA)   3. CIVIL CODE §1770(A)(22)(A) - 2

**PARTIES**

1. Plaintiff Anton A. Ewing is a natural person as defined by 47 USC §153(39), and a resident of San Diego, California at all times relevant to this action. Plaintiff was present in San Diego at all times relevant to this action and was also the owner and sole user of personal, private residential cellular phone number 619-719-9640[3].

2. Plaintiff has been repeatedly <u>called</u> and <u>texted</u> by MONEVO, Inc, directly, without consent, permission or authority, all in direct violation of express commands by Plaintiff to stop, cease and desist and by virtue of registration on www.donotcall.gov as well as Plaintiff's express demands directly to Defendant to stop all future calls and texts.

3. Defendant MONEVO, Inc is a Delaware corporation that conducts business throughout this District, in San Diego, California.  Defendant MONEVO, Inc is a "person" as defined by 47 USC §153(39).  Defendant is in the business of selling shame loans at usurious interest rates.  Defendant uses the wires of the United States to harass and annoy DNC registered telephone

---

[3] For clarity, this number is not a hardwired landline.
COMPLAINT   1. 47 U.S.C. §227 (TCPA)   2. PC §637.2 / 632.7 (CIPA)   3. CIVIL CODE §1770(A)(22)(A) - 3

22cv

owners with their solicitation calls to sell sham loans to unsuspecting victims in California.

4. Defendant MONEVO, Inc is located at 169 Saxony Road, Suite 212, Encinitas, CA 92024.  Plaintiff is only suing Monevo, Inc and no other persons or parties, named or unnamed, whether as Does or otherwise. Defendant's attorneys should not be confused here.  Plaintiff repeats himself again, there is only One (1) defendant named in this civil lawsuit and Plaintiff is specifically alleging that Defendant directly engage in the illegal and offending conduct.

## JURISDICTION AND VENUE

5. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").  This is not a "diversity" of citizenship case. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012)

6. This Court has personal jurisdiction over the Defendant since the Defendant conducts business in this District and specifically marketed to Plaintiff within this District relating to the business that it conducts here. Venue is proper in this District because Plaintiff resides in this District and the events leading to this case occurred in this District.

COMPLAINT   1. 47 U.S.C. §227 (TCPA)   2. PC §637.2 / 632.7 (CIPA)   3. CIVIL CODE §1770(A)(22)(A) - 4

22cv

7. The Honorable District Judge William Q. Hayes, on 9/22/2022, in *Ewing vs. CSolar*, 22cv00720-WQH, at ECF No. 8, entered an order granting Plaintiff's motion for default judgment, imposing $11,000 against CSolar. Importantly, the Complaint in that case is and was **substantially similar** to this Complaint, the only real differences being the names of the defendants, the dates, times and telephone numbers called from and the fact that CSolar was selling solar panels while Defendant Monevo, Inc is selling loans. Since this Court was able to find that all the elements of the TCPA causes of action were well-plead, that renders any motion to dismiss this FAC frivolous, harassing and solely for the purpose of delay, a violation of 28 USC §1927. Plaintiff's Complaint was able to be read, understood and ruled upon in Plaintiff's favor in the CSolar case by the Honorable Judge Houston. Defendant cannot credibly argue that the Complaint in *Ewing vs. Monevo* is so bad that it must be dismissed when in fact Judge Houston was able to figure it out rather cogently.   Judge Houston's analysis should be read by Defendant's attorneys to assist them.

8. The Court has ancillary and supplemental jurisdiction, in its discretion, over the attendant state law claims that are part of a common nucleus of operative facts. Plaintiff is suing for violation of CIPA, PC §632.7 et seq. – illegal cell phone recording, Civil Code §1770(a)(22)(A)- illegal prerecorded voice

COMPLAINT   1. 47 U.S.C. §227 (TCPA)   2. PC §637.2 / 632.7 (CIPA)   3. CIVIL CODE §1770(A)(22)(A) - 5

22cv

message to a cell phone without consent and without a prior live operator introduction.

9. Defendant MONEVO, Inc has purposefully directed its activities into California.  Area code 619 is entirely within San Diego County.

## INTRODUCTION

10. As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).  Plaintiff is also doing his job to help stop harassing and annoying telemarketers throughout the country by filing these lawsuits.

11. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).  Plaintiff has done registered his phone.

12. A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

13. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

14. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. *In re Rules and Regulations Implementing the TCPA of 1991*, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

15. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

16. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

17. According to online robocall tracking service "YouMail," 4 billion robocalls were placed in September 2021 alone, at a rate of 131.1 million calls per day. www.robocallindex.com.  Plaintiff still receives nearly a dozen harassing and annoying robocalls each and every day from unscrupulous businesses trying to sell auto repairs, life insurance, solar panels, credit repair, student loan assistance, and merchant cash advances to name just a few.  This must stop.

18. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.  It is unfortunate that making a complaint to the FCC actually results in nothing being done.  The FCC simply does not have the resources to go after telemarketers.

19. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, Cutting off Robocalls (July 22, 2016), statement of FCC chairman.[4]

20. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[5]

21.  In recent years a troubling trend has surfaced in the merchant cash advance industry, cold calling consumers soliciting their services without their

_____

[4] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[5] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf

COMPLAINT  1. 47 U.S.C. §227 (TCPA)   2. PC §637.2 / 632.7 (CIPA)   3. CIVIL CODE §1770(A)(22)(A) - 8

22cv

consent, including calls that are being placed to consumers that registered their phone numbers on the DNC.

22. This merchant cash advance telemarketing trend has resulted in consumers, including this Plaintiff, being bombarded by unsolicited solicitation calls without their (or his) consent and in violation of the TCPA, in violation of CIPA, and Civil §1770.

23. The initial part of the call was a prerecorded voice, then Defendant's employee "Lisa" admitted to Plaintiff, at the end of the 9/13/2022 telemarketing call, when asked by Plaintiff, that Defendant does in fact record all of its solicitation calls.  Lisa transferred the call to another male person attempted to justify the illegal act of recording by adding that they record for "training and quality control purposes" but that additional fact is not an excuse for violating CIPA.  Any and all calls into California must disclose, at the beginning of the call, that said call is being recorded.  Waiting until the very end of the call to admit, when asked, that it was recorded is too late.  Liability for recording attaches when there is a call, to a cellular phone, where there is a reasonable expectation of privacy and disclosure of the fact of recording does not occur at or near the beginning of said call.  Cellular phones do not require confidential private information to be exchanged to be protected by CIPA.

COMPLAINT   1. 47 U.S.C. §227 (TCPA)   2. PC §637.2 / 632.7 (CIPA)   3. CIVIL CODE §1770(A)(22)(A) - 9

24. In an action under the TCPA, a plaintiff must only show that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), aff'd, 755 F.3d 1265 (11th Cir. 2014).

25. The Federal Communications Commission ("FCC") is empowered to issue rules and regulations implementing the TCPA. According to the FCC's findings, calls in violation of the TCPA are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

26. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

27. The TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. §64.1200(f)(12). In determining whether a communication

constitutes telemarketing, a court must evaluate the ultimate purpose of the communication. *See Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015).

28. "Neither the TCPA nor its implementing regulations 'require an explicit mention of a good, product, or service' where the implication of an improper purpose is 'clear from the context.'" Id. (citing *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012)).

29. "'Telemarketing' occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services." *Golan*, 788 F.3d at 820 (citing 47 C.F.R. § 64.1200(a)(2)(iii); 47 C.F.R. § 64.1200(f)(12); *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd at 14098 ¶ 141, 2003 WL 21517853, at *49).

30. The FCC has explained that calls motivated in part by the intent to sell property, goods, or services are considered telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶¶ 139-142 (2003). This is true whether call recipients are encouraged to purchase, rent, or invest in property, goods, or services during the call or in the future. *Id.*

31.  In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶ 136 (2003).

32.  If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent. *See In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls").

33.  Further, the FCC has issued rulings and clarified that consumers are entitled to the same consent-based protections for text messages as they are for calls to wireless numbers. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) (The FCC has determined that a text message falls within the meaning of "to make any call" in 47 U.S.C. § 227(b)(1)(A)); *Toney v. Quality Res., Inc.*, 2014 WL 6757978, at *3 (N.D. Ill. Dec. 1, 2014) (Defendant bears the burden of showing that it obtained Plaintiff's prior express consent before sending him the text message). (*emphasis added*).

**COMMON ALLEGATIONS**

34. Defendant MONEVO, Inc is a loan and merchant cash advance broker, selling its services throughout San Diego County.

35. Defendant MONEVO, Inc which conducts business using the assumed name "American Personal Loans" owns and operates the website, www.monevo.com.

36. Defendant MONEVO, Inc conducts telemarketing campaigns to sell its services to consumers throughout southern California. As part of those campaigns, unsolicited text messages are sent to cell phones of consumers across the state by Defendant MONEVO, Inc. Plaintiff can assert and allege this detailed fact because Defendant's employee, Lisa, expressly admitted it.

37. In placing unsolicited text messages to consumers, Defendant MONEVO, Inc sent multiple text messages to phone numbers that are registered on the DNC, such as Plaintiff's number (-9640).

38. In response to these text messages, Plaintiff Ewing files this lawsuit seeking injunctive relief requiring Defendant MONEVO, Inc to cease from violating the Telephone Consumer Protection Act, as well as an award of statutory damages to Plaintiff Ewing and costs ($402 filing fee plus service of process fees). The text messages were generic in nature and did not address Plaintiff

by name.  The text message did not offer a way to opt out or to stop future

solicitation texts.

39. Plaintiff Ewing heard a very clear "bubble popping" type sound followed by

a rather long pause before the artificial-voice prerecorded message began to

play on the call.  Plaintiff was required to hit "1" to be transferred to a live

operator.  This happened on each and every call that is the subject of this

lawsuit.  Many courts have held that this very same bubble popping and long

pause are highly indicative of an ATDS being used.  However, the

Defendant fails to comprehend that it is also violation of section

227(b)(1)(A) to use, and Defendant did in fact use, an artificial pre-recorded

voice message to obtain a subsequent transfer to a live operator employee of

Defendant.

40. Plaintiff and Defendant do not have a pre-existing business relationship.

Plaintiff has never been a customer or client of Defendant's business.

41. Specifically, the hardware and software used by Defendant MONEVO, Inc

has the capacity to store and/or produce numbers using a random or

sequential number generator, and to dial such numbers, *en masse*, in an

automated fashion without human intervention.  Defendant's automated

dialing equipment includes features substantially similar to a predictive

dialer in that it is capable of sending numerous text messages and calls simultaneously, without human intervention. The distinct bubble-popping sound and the long silent pause were, in Plaintiff vast experience, the clear indication that an ATDS robo-dialer was used by Defendant for the calls.

42. The text messages were sent by Defendant with its knowledge and approval of the CEO of Defendant. Defendant MONEVO, Inc knew about the messages, received the benefits of the messages, directed that the messages be sent, and/or ratified the sending of the messages by its employees using Defendant's computers and software. The text messages were generic which indicates an ATDS was used by Defendant.

43. All of the text messages were sent via an ATDS at the direction and oversight of Defendant MONEVO, Inc. Said Defendant knew about, directed, ratified, and benefitted from the solicitation text messages that it directly sent to Plaintiff.

44. Based on Plaintiff's vast knowledge and experience with these type of telemarketers, the equipment used to send the texts at issue has the capacity to use a random or sequential number generator in the process of storing

numbers from a pre-produced list for texting at a later date.[6]  Plaintiff alleges that this is exactly what Defendant MONEVO, Inc has done.

45. The equipment at issue, in this case, also has the capacity to produce telephone numbers using a random or sequential number generator. Specifically, the texting software, by virtue of being inextricably linked to a computer operating system, has the capacity to generate random or sequential telephone numbers.  One of Defendant's employees, Lisa, expressly admitted that they were using an "auto dialing computer" to make the calls and send out the text messages in order to get California residents to buy their loan programs.  Defendant earns and gets paid a commission for each loan they sell.

46. By sending unsolicited text messages as alleged herein, Defendant MONEVO, Inc has caused Plaintiff  actual harm. This includes the aggravation, nuisance, and invasions of privacy that result from the placement of such text messages, in addition to the wear and tear on his phone, interference with the use of his phone, consumption of battery life, loss of value realized for monies he paid to his AT&T carrier for the receipt

---

[6] 21-cv-01646-L-BLM, PageID.6, ECF No. 1, *Williams vs. Zeeto, LLC* (SD CA 9/20/21)
COMPLAINT   1. 47 U.S.C. §227 (TCPA)   2. PC §637.2 / 632.7 (CIPA)   3. CIVIL CODE §1770(A)(22)(A) - 16

22cv

of such messages, and the diminished use, enjoyment, value, and utility of his telephone plan. Furthermore, Defendant MONEVO, Inc sent the messages knowing they trespassed against and interfered with Plaintiff's use and enjoyment of, and the ability to access, his phone, including the related data, software, and hardware components.

47. FCC regulations promulgated under the TCPA specifically prohibit Defendant from using an artificial or prerecorded voice to call Plaintiff's Number for the purpose of advertising or telemarketing absent Plaintiff's prior express written consent. See 47 C.F.R. § 64.1200(a)(2)[7]

## PLAINTIFF EWING'S ALLEGATIONS DIRECTLY AGAINST DEFENDANT MONEVO, INC.

48. Defendant MONEVO, Inc called or texted Plaintiff Ewing, on his DNC registered personal cell phone, 619-719-9640, on the following dates:

   a. August 5, 2022 from 605-673-2867 at 11:21 AM -- Call

   b. August 10, 2022 from 716-230-6152 at 9:06 AM – Call

   c. August 10, 2022 from 754-247-2663 at 11:50 AM—Call

   d. August 11, 2022 from 608-592-4488 at 10:36 AM – Call

---

[7] 21-cv-02040-CAB-KSC, PageID.4 in ECF No. 1, *Johnson vs. Digital Media Solutions.*

e.  August 11, 2022 from 757-568-7341 at 12:16 PM – Call

f.  August 12, 2022 from 540-307-3826 at 9:13 AM – Call

g.  August 15, 2022 from 866-898-0921 at 9:06 AM—Call

h.  August 18, 2022 from 605-582-8078 at 1:53 PM – Call

i.  August 23, 2022 from 860-212-6388 at 4:42 PM – Call

j.  August 24, 2022 from 714-441-1359 at 5:38 PM-- Call

k.  September 13, 2022 from 575-500-3027 at 4:07 PM – Call

l.  September 14, 2022 from 608-314-0739 at 3:44 PM—Call

m.  September 23, 2022 from 608-455-1402 at 3:02 PM – Call

n.  September 14, 2022 from 833-733-1657. –text message

o.  September 20, 2022 from 786-480-0962. –text message

p.  October 18, 2022 from 502-892-0309. –text message

49. The above dates, times, from what number and to what number is all the detail that is required under the TCPA.  Nothing else is necessary at the initial pleading stage.  *See* Rule 8 and Rule 10, FRCP.  The Court is also respectfully requested to see each footnote and the cases that Plaintiff has cited from.  While this FAC was written by a pro per litigant, it was effectively lifted from TCPA complaints drafted by TCPA plaintiff lawyers.

50. There were, thus far, 13 calls (($1,500 + $1,500 +$5,000) *13 = $104,000)) and 3 text messages ($1500 + $1500  times 3 = $9,000) from Defendant Monevo, Inc.

51. Defendant's employee Lisa admitted to Plaintiff that he did not dial Plaintiff's phone number by finger, but rather using a computer software that stores and automatically dials the phone numbers without any input from him.  "Lisa" stated that once a person hit's "1" then the software connects or transfers the call to either him or another telemarketer in the office.

52. Replying "STOP" did not work.  Plaintiff received additional subsequent text messages from Defendant MONEVO, Inc.  Importantly, Plaintiff became enraged on each telephone call making very clear that the caller must never telemarket him ever again.  And yet, Defendant MONEVO, Inc keeps calling and texting.

53. Spoofing the prefix of 719, or any other local prefix spoof, is a standard ATDS robo-dialing technique or practice that all telemarketers use to attempt to increase the likelihood that a called person will answer the call. Fortunately, since the STIR/Shaken[8] laws were made effective, this scam is

---

[8] https://www.fcc.gov/call-authentication

COMPLAINT   1. 47 U.S.C. §227 (TCPA)   2. PC §637.2 / 632.7 (CIPA)  3. CIVIL CODE §1770(A)(22)(A) - 19

22cv

now significantly attenuated but it is not stopping by any stretch of the imagination.

54. The pre-recorded voice message at the beginning of each telephone solicitation call from Defendant (not a 3ʳᵈ part or agent) stated: "*Could you use money for your personal bills?  Press one for to be connected*" or similar words to that affect.  The TCPA and CLRA do not require a plaintiff to be able to memorize and regurgitate every word that every telemarketer states.

55. Defendant MONEVO, Inc was calling to sell its loan brokering services to Plaintiff who was in California at the time.

56. Plaintiff Ewing registered his cell phone number on the DNC on February 16, 2012, for the express purpose that he would not receive unsolicited calls or text messages.  Plaintiff Ewing has gone even further to pay for various web pages informing the world of telemarketers to not call him or else they will be sued.  Moreover, Plaintiff has expressly informed over one hundred TCPA defense attorneys, in writing, across the nation to inform their clients to not call Ewing for solicitation.   At the bottom of each email Plaintiff also has the following warning which he has sent to thousands of persons:

   a. "This email does not authorize you to call me for SOLICITATION.  This email is not consent to TELEMARKET

COMPLAINT   1. 47 U.S.C. §227 (TCPA)   2. PC §637.2 / 632.7 (CIPA)   3. CIVIL CODE §1770(A)(22)(A) - 20

22cv

my phone number.  Any calls without express authorized

consent shall be treated as a violation of 47 USC §227."

57. Plaintiff Ewing's phone number is not associated with a business and is

used for personal, private residential use only.  Notwithstanding, mixed use

phones are still fully protected.

58. The text messages that Plaintiff received are solicitations encouraging the

purchase of Defendant MONEVO's services.

59. The text messages were sent by Defendant MONEVO, Inc.  The text

messages were sent at Defendant MONEVO, Inc's direction, command and

control, that is, Defendant ordered each of its employees to respond to the

calls that it made after it sent out the automatic solicitations.

60. Defendant MONEVO, Inc expressly and overtly controlled the exact

generic content of the text messages.

61. The text messages, unlike the emails, did not address Plaintiff by name.

Thus they were sent by, with and through an automatic telephone dialing

system or robo-dialer.

62. Said dialing system has the capacity to store and randomly generate phone

numbers and to dial those numbers without human intervention.

63. Plaintiff Ewing never provided his phone number or his consent to

Defendant MONEVO, Inc to receive any solicitation from them or on their

COMPLAINT   1. 47 U.S.C. §227 (TCPA)   2. PC §637.2 / 632.7 (CIPA)   3. CIVIL CODE §1770(A)(22)(A) - 21

behalf.  Prior to receiving the text messages, Plaintiff had never visited any location or internet web page owned, used, or controlled by Defendant MONEVO, Inc.

64.  The unauthorized solicitation telephone text messages that Plaintiff received from Defendant, as alleged herein, have harmed Plaintiff Ewing in the form of annoyance, nuisance, and invasion of privacy, and disturbed the use and enjoyment of his phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on the phone.

65.  Section 310.3(b) of the TSR prohibits providing substantial assistance or support to telemarketers when that person knows or consciously avoids knowing that the seller or telemarketer is engaged in any act or practice that violates the TSR.  *United States v. Dish Network LLC*, No. 09-3073, 2017 U.S. Dist. LEXIS 85543, at *299 (C.D. Ill. June 5, 2017)

66.  The phone calls placed to Plaintiff's cellular telephone were placed via an "automatic telephone dialing system," ("ATDS") as defined by 47 U.S.C. §227 (a)(1) as prohibited by 47 U.S.C. § 227 (b)(1)(A).  At one or more instance during these calls, Defendant MONEVO, Inc utilized an "artificial or prerecorded voice" as prohibited by 47 U.S.C. § 227(b)(1)(A).

COMPLAINT   1. 47 U.S.C. §227 (TCPA)   2. PC §637.2 / 632.7 (CIPA)   3. CIVIL CODE §1770(A)(22)(A) - 22

22cv

67. Defendant's calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A).

68. Defendant's calls were placed to telephone number assigned to a cellular telephone service for which Plaintiff incurs a charge for incoming calls pursuant to 47 U.S.C. § 227(b)(1).

69. Plaintiff is not a customer of Defendant's services and has never provided any personal information, including his cellular telephone number, to Defendant MONEVO, Inc for any purpose whatsoever.  In addition, Plaintiff told Defendant MONEVO, Inc at least once to stop contacting him and Plaintiff has been registered on the Do-Not-Call Registry for at least thirty (30) days prior to Defendant MONEVO, Inc contacting him.  Accordingly, Defendant MONEVO, Inc never received Plaintiff' "prior express consent" to receive calls using an automatic telephone dialing system or an artificial or prerecorded voice on his cellular telephone pursuant to 47 U.S.C. § 227(b)(1)(A).[9]

70. Plaintiff did not have a personal relationship with Defendant MONEVO, Inc at any point in time.[10]

_____

[9] 21-cv-01204-H-WVG at PageID.4 in ECF No. 1, *Benitez vs. United Debt Settlement, LLC.*
[10] 21-cv-01123

COMPLAINT   1. 47 U.S.C. §227 (TCPA)   2. PC §637.2 / 632.7 (CIPA)   3. CIVIL CODE §1770(A)(22)(A) - 23

71. Defendant MONEVO, Inc did not make the telephone solicitations in error.

72. When Plaintiff answered calls from Defendant MONEVO, Inc, he heard a prerecorded message and had to wait on the line to be transferred to a live representative after pressing "1."

73. In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA. See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 FCC Rcd. 14014, ¶ 136 (2003).

74. If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent. See In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls").

75. The Honorable Chief Judge Dana M. Sabraw has ruled, in *Gross vs. GG Homes,* in the Southern District of California, that the US Supreme Court's ruling in *Duguid vs. Facebook* does not apply at the motion to dismiss stage of the litigation, but it is more properly applied at the Rule 56 MSJ stage.

76. Plaintiff has never done business with Defendant or any of its employees.

77. Defendant's initial portion of each call shown above, was a violation of 47 USC §227(b)(1)(A) because it was initially a prerecorded artificial voice. That means the test of whether an ATDS was used is not relevant at this time.

78. The Complaint alleges 13 of the 16 telephone calls violated of CLRA – Cal. Civ. Code §1770(a)(22)(A), but not the three text messages sent without consent.  Since Plaintiff demanded that Defendant stop calling at the end of the first call, then Plaintiff asserts a CLRA violation on 13 of the calls alleged herein.

79. Billions of illegal and harassing telemarketing calls are made to Americans each month.  But for people like Plaintiff, it would be tens of billions of illegal and harassing telemarketing calls.  Parasitic criminal organizations like Defendant need to be put out of business in order to stop this infection called telemarketing.  Most Americans receive more spam texts and more telemarketing calls than they do communications from friends and family.

80. Defendant Monevo, Inc, through its employee Lisa and others, called Plaintiff to sell its loan products.  The calls were not placed by an unknown third party.  Defendant physically initiated the calls and physically sent the text message with their auto dialing software and equipment.

81. Since Plaintiff registered his personal private cellular phone, 619-719-9640, on www.donotcall.gov more than 31 days prior to the first call and the first text from Defendant, then Defendant's failure to scrub their calling lists against the DNC is a violation of 27 USC §227(c).

82. Defendant's illegal calls and illegal texts were and are the cause of Plaintiff damages, including statutory damages, which have been held to be sufficient damage and sufficient injury to pass Article III standing.

83. Defendant called Plaintiff's cellular telephone number, using an automatic telephone dialing system with a prerecorded artificial voice message introduction, without Plaintiff's prior express written consent, by robo-dialing Plaintiff's DNC registered phone number, devoid of any pre-existing or established business relationship.  Further, Defendant continued to seriously and substantially harass and annoy Plaintiff after Defendant was expressly and explicitly told to cease and desist.  Defendant would not know concrete injury even if it were hit by a ton of concrete bricks.

84. Since Defendant has failed to provide a copy of its DNC policies and training procedures, within 30 days, then Defendant has violated the FCC and FTC regulations that are incorporated into 27 USC §227.

### FIRST CLAIM FOR RELIEF
**Telephone Consumer Protection Act**

COMPLAINT   1. 47 U.S.C. §227 (TCPA)   2. PC §637.2 / 632.7 (CIPA)   3. CIVIL CODE §1770(A)(22)(A) - 26

22cv

**(Violation of 47 U.S.C. § 227(b)(1)(A) and (c)(5))**
**(Against Defendant MONEVO, Inc)**

85. Plaintiff Ewing repeats and realleges paragraphs 1 through 84 of this Complaint and incorporates them by reference.

86. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered her or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

87. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

88. Defendant MONEVO, Inc violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the Do Not Call Registry participants (including Ewing) who

COMPLAINT   1. 47 U.S.C. §227 (TCPA)   2. PC §637.2 / 632.7 (CIPA)   3. CIVIL CODE §1770(A)(22)(A) - 27

22cv

registered their respective telephone numbers on the National Do Not Call

Registry, a listing of persons who do not wish to receive telephone

solicitations that is maintained by the federal government.

89. Defendant MONEVO, Inc violated 47 U.S.C. § 227(c)(5) because Plaintiff

received more than one telephone text message in a 12-month period made

by or on behalf of Defendant MONEVO, Inc in violation of 47 C.F.R. §

64.1200, as described above.

90. Defendant MONEVO, Inc failed to obtain any prior express consent that

included, as required by 47 C.F.R. § 64.1200(f)(8)(i), a "clear and

conspicuous" disclosure informing the person signing that:

> (A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing text messages using an automatic telephone dialing system; and

> (B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

91. As a result of Defendant's conduct as alleged herein, Plaintiff suffered

actual damages and, under section 47 U.S.C. § 227(c), is entitled, *inter alia,*

to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

92. Defendant MONEVO, Inc used an ATDS to both send text messages and to dial Plaintiff's phone number to play its artificial prerecorded voice message.

93. By sending unsolicited text messages to Plaintiff's cellular telephone without prior express consent, and by utilizing an ATDS, Defendant MONEVO, Inc violated 47 U.S.C. § 227(b)(1)(A)(iii).

94. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by Plaintiff.

95. Defendant MONEVO, INC. violated 47 USC §227(b)(1)(A) by using an artificial prerecorded voice message and by sending generic unsolicited text messages with an ATDS, for which Plaintiff is entitled to $500 for each negligent violation and $1500 for each willful or knowing violation.

96. 47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, '*Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991.*'" The Report and Order, in turn, provides as follows:

"The Commission's rules provide that companies making telephone solicitations to residential telephone subscribers must comply with time of day restrictions and must institute procedures for maintaining do-not-call lists. For the reasons described above, we conclude that these rules apply to calls made to wireless telephone numbers. We believe that wireless subscribers should be afforded the same protections as wireline subscribers."

97. 47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing call made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entities making calls for telemarketing
>     purposes must have a written policy, available upon demand, for
>     maintaining a do-not-call list.

> (2) Training of personnel engaged in telemarketing. Personnel
>     engaged in any aspect of telemarketing must be informed and
>     trained in the existence and use of the do-not-call list.

COMPLAINT   1. 47 U.S.C. §227 (TCPA)   2. PC §637.2 / 632.7 (CIPA)   3. CIVIL CODE §1770(A)(22)(A) - 30

22cv

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request . . .

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long-distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

98. Here, Defendant MONEVO, Inc sent Plaintiff Ewing multiple unsolicited text messages after he had submitted valid "STOP" and "BYE" requests.

99. As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227 et seq., Plaintiff is entitled an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

### SECOND CLAIM FOR RELIEF
**Consumer Information Privacy Act**
**(Violation of CA Penal Code §632.7 and §637.2)**
**(Against Defendant MONEVO, Inc)**

100.     Plaintiff Ewing repeats and realleges paragraphs 1 through 84 of this

Complaint and incorporates them by reference.

101.     The foregoing acts and omissions of Defendant MONEVO, Inc

constitute numerous and multiple knowing and/or willful violations of

California's Invasion of Privacy Act.

102.     As a result of Defendant's knowing and/or willful violations of PC

§632.7 and §637.2, Plaintiff is entitled to statutory damages of $5,000 per

call that was illegally recorded without Plaintiff's knowledge or consent.

103.     Plaintiff is also entitled to and seeks injunctive relief prohibiting such

conduct in the future.

### THIRD CLAIM FOR RELIEF
**Consumer Legal Remedies Act**
**(Violation of CA Civil Code §1770(a)(22)(A))**
**(Against Defendant MONEVO, Inc)**

104.     Plaintiff Ewing repeats and realleges paragraphs 1 through 84 of this

Complaint and incorporates them by reference.

105.     Defendant MONEVO, Inc used and employed an artificial voice,

prerecorded message, without consent or permission in advance, to initiate

each call to Plaintiff.

106.    Plaintiff suffered harm by Defendant's violation of California Civil

Code §1770(a)(22)(A), inter alia, through the loss of use of his phone during

each call as well as annoyance and harassment caused, proximately and

actually, by Defendant MONEVO, Inc.  Damages of $2500 per call for 13 of

the 16 calls are hereby requested based on the harassment and civil stalking

engaged in by Defendant.

107.    Defendant's acts of unfair competition include, but are not limited to,

the following:  (1) directly violated the TCPA at 47 USC §227(c) and its

regulations at 47 C.F.R. §64.1200(c)(2), by engaging in a pattern or practice

of initiating telephone solicitations to Plaintiff's residential telephone, whose

telephone number was listed on the National Do Not Call Registry, and (2)

directly violated 47 C.F.R. §64.1200(a)(2) and 47 USC §227(b)(1)(B), by

engaging in a pattern or practice of initiating telephone solicitations to

Plaintiff's residential telephone line, using artificial or prerecorded voices to

deliver a message without the prior express consent of the called party and

where the call was not initiated for emergency purposes or exempted by rule

or order of the Federal Communications Commission under 47 USC

§227(b)(2)(B).

108.     Defendant has directly violated California Business & Professions Code section 17592(c)(1) by making or causing to be made telephone calls to Plaintiff's California telephone number listed on the National Do Not Call Registry and seeking to rent, sell, promote, or lease goods or services (namely usury interest rate loans without a CFL license) during those calls.

109.     Plaintiff is entitled to, and hereby seeks, both punitive and exemplary damages to send a clear message to Defendant and others like Defendant to cease and desist from violation of the law.

110.     Plaintiff is also entitled to and seeks injunctive relief prohibiting such conduct in the future.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Ewing, individually, prays for the following relief:

a) Damages as provided by statute and in the discretion of the Court;

b) An award of actual and/or statutory damages and costs plus treble damages if willful or knowing violations are shown;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

d) As a result of Defendant's negligent violations of 47 U.S.C. §227(b)(1) and §227(c)(5), Plaintiff is entitled to and requests $500 in statutory

damages, for each and every violation, pursuant to 47 U.S.C. 227(b)(3)(B)

plus treble damages ($1,500 per call and per text), a total of $3,000 per call

under the TCPA;

e) An injunction requiring Defendant to cease all unsolicited calling activity

 that violates the TSR, the FTC Act and the TCPA, and to otherwise protect

the interests Plaintiff Ewing;

f) $5,000 for each call the was illegally recorded without Plaintiff's consent,

g) $2,500 for each of the 13 calls that contained a pre-recorded artificial

voice message at the beginning of each call.

h) for exemplary and punitive damages against Defendant in an amount to

be determined with exactness at trial herein; and

i) Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Ewing requests a jury trial.

Dated this 20th day of October, 2022.

/s/ Anton Ewing

Anton A. Ewing, Plaintiff

COMPLAINT   1. 47 U.S.C. §227 (TCPA)   2. PC §637.2 / 632.7 (CIPA)   3. CIVIL CODE §1770(A)(22)(A) - 36

22cv